UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROBERT J LEACH, | }<br>} |
| Plaintiff, | } |
| VS. | } CIVIL ACTION NO. H-07-4331 |
| | } |
| GORDON H MANSFIELD, | }<br>} |
| Defendant. | } |

## OPINION & ORDER

Pending before the Court is Plaintiff Robert Leach's ("Leach") Motion for Partial Summary Judgment (Doc. 26), and the response and reply thereto. For the reasons set forth below, the Court DENIES the motion.

**I.     Background & Relevant Facts.**

Leach brings suit for violations of the Family Medical Leave Act of 1993, 29 USC § 2601 *et seq.*, and the Vocational Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 USC § 791 *et seq.* His present motion is limited to requesting a determination of whether, when his employer, Michael E. Debakey Veteran Affairs Medical Center ("VAMC") ordered his psychological and psychiatric examination, it was justified by "business necessity" as required by §12112(d)(4) of the Americans with Disabilities Act ("ADA").[1]

Leach began his employment with the VAMC in 2001 as a Human Resources Assistant. Doc. 32 at 2. Defendant concedes that the work environment was highly stressful. *Id*. The VAMC had approximately 3800 staff, which would usually require 12 employees to manage Human Resources. Doc. 32 Exh. 1 at 9. Instead, the VAMC had four, and eventually three. *Id*. Despite the need to concentrate while "coding," the noise level in Leach's work space

---

[1]     Section 12112(d)(4) is incorporated into the Rehabilitation Act by §§ 791(g), 793(d) and 794(d).

was continuously "cacophonic." *Id*. at 9  Adding to the distraction, doctors, nurses and other staff were constantly walking in requiring attention, while the Human Resource Assistants were simultaneously required to do the "coding." *Id*.  According to a retired colleague, Paul Anderson ("Anderson"), who had served in Vietnam and disabled during his service, the work was "like a war almost . . . it was just impossible."  Doc. 32 Exh. 1 at 10.

According to another retired colleague, Jessica Hilson, "[t]he stress weighed heavily on our health."  Doc. 26 Exh. J at 2.  Anderson admitted he developed "physical problems" as a result of work stress that caused him to go to the hospital.  Doc. 32 Exh. 1 at 10.  Leach began seeing a doctor for mental health problems.  *Id*.

Beginning on or about November 7, 2005, Leach began addressing a series of lengthy emails to his colleagues and supervisors complaining about various workplace issues, including the size of the award of bonuses to management as compared to the regular bonuses. *See generally*, Doc. 26 Exh. I.  In these emails, Leach was, at times, incoherent and highly aggressive, frequently using expletives.  *Id*.  For example, with regard to the award of bonuses, Leach wrote a "Letter of Concern" that stated:

> Questions:
> (1) "Self," and myself says, "What?" "Do you believe that these awards, as submitted, are either statutorily or regulatorally [Sic] justified, as you understand the legal or regulartory [Sic] criteria to be?"

Doc. 26 Exh. I at 2.

> Leach concluded;
>
> "Now they can have the prize they won.  The other part of my personality that is no where in the neighborhood of pleasant, respectful or nice in any stretching of your imagination.  My only requirement , as I see it, is to fight the urge to express my disrespect for these despicable [expletive]."

*Id*. at 4.

The emails maintained a threatening tone, and, at one point, became explicit. On or about May 11, 2006, Leach wrote in an email to his colleagues and supervisors:

> Even more, I have never been so tempted to simply "go 86." For those that don't know what "going 86" is, let is [Sic] us to understand it's not a good thing.

*Id.* at 6. "Going 86" is a derivative of the more commonly known phrase, "going postal." Going postal was a phrase that arose in the 1990's to describe a series of workplace shootings at which stressed postal employees shot their colleagues and themselves to death. *See* http://www.phrases.org.uk/meanings/159050.html. To 86 someone means effectively to kill them. "The actual meaning comes from the size of a grave hole. 8' long, 6' deep." *See* http://wiki.answers.com/Q/What_does_it_mean_to_'86'_someone. Thus, the amalgam "go 86" was an incoherent threat by Leach to go to work and kill his colleagues and supervisors.

On or about June 2, 2006, Leach requested advanced sick leave from June 1, 2006 through to June 15, 2006. Doc. 26 Exh. G-1 at 1. He provided his treating physician's certification that he was suffering an "emotional reaction" from work stress. On or about June 5, 2006, Leach's supervisor Jerry Erwin ("Erwin") requested from VAMC that Leach be subjected to a fitness-for-duty examination because of the emails Leach sent. Doc. 32 Exh. 4 at 1. On or about July 17, 2006, the VAMC informed Leach by letter he was required to take the fitness-for-duty examination pursuant to 5 CFR 339.301. Doc. 32 Exh. 6 at 1. The letter stated as the basis for the examination that "[y]our recent absences from duty, recent medical certification, and reports of inappropriate or unusual behavior have raised concerns regarding physical and/or mental status in your ability to perform the full range of duties of your position." *Id.* The letter added, "[t]hese concerns have been reported by co-workers and your immediate supervisor." *Id.*

On or about July 19, 2006, Leach reported for the examination. Doc. 32 Exh. 7 at 1. Following a medical examination, he was scheduled to receive a psychiatric examination by

Dr. Jaime Ortiz-Toro ("Ortiz-Toro".)  *Id*.  Ortiz-Toro never completed the examination, however, as Leach refused and left before the doctor could finish.  *Id*. at 1-3.  Consequently, VAMC decided that a further psychological examination was necessary.  *Id*. at 3.

On August 15, 2006, VAMC again directed Leach to attend a fitness-for-duty examination to take place on August 28, 2006.  Doc. 32 Exh. 8.  Leach again reported for the examination but left before it could be concluded.  Doc. 32 Exh. 9.

## II.   Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish

beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence

to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988). The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1988).

**III.    Analysis.**

This case addresses the balancing act between the ADA's proscription against using medical evaluations to pry unnecessarily into the private lives of employees, and the need to ensure a safe workplace. Because the employee in question, in a serious context, threatened to harm others in his workplace, there can be no doubt his employer was justified in ordering him to submit to a psychiatric examination. As explained in further detail below, the VAMC also complied with the requirements of the Code of Federal Regulations in administering the exam.

>Title 42 USC §12112(d)(4)(A) of the ADA states:
>
>(d) Medical examinations and inquiries:
>  (4) Examination and inquiry.
>    (A) Prohibited examinations and inquiries. A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

Thus, to justify a medical examination, a covered entity must meet two requirements: (1) the examination must be "job-related," and (2) the inquiry must be "consistent with business necessity." Although business necessity occurs in its more immediate sense when, for example, an employee must undergo a weight-lifting exam for a pipefitting job, there is no less a need for business necessity when the safety of employees is at stake. *E.g.*, *Fuzy v. S&B Eng'rs & Constructors, Ltd.*, 332 F.3d 301, 303 (5th Cir. La. 2003)(applying "business necessity" of §12112(d)(4) to weight-lifting test). This Court is in agreement with the court in *Bodenstab v. County of Cook*, 539 F. Supp. 2d 1009, 1020 (N.D. Ill. 2008), which held that it would be "grossly negligent" for an employer not to order a psychiatric examination pursuant to § 12112(d)(4) when an employee makes serious workplace threats. In *Bodenstab*, a doctor had been diagnosed with terminal cancer and had made comments about "taking others with him" when he died. 539 F. Supp. 2d at 1020. The hospital ordered that the doctor be subjected to be a psychiatric examination. *Id*. Here, considering the highly stressful environment as well as the series of increasingly aggressive emails written by Leach to his supervisors, VAMC did the only responsible thing when they took his threat to kill his colleagues and himself seriously.

>In his lengthy brief, Leach attempts to portray his examination as violative of 5 CFR 339.301 in several ways. This regulation covers the approved method of ordering a psychiatric examination. Namely, physical causes must be eliminated first by a medical

examination, the test must be administered by professionals according to professional standards, and, pertinently, it can be done to ascertain whether the employee is a "hazard to himself or others." The Court finds all these requirements have been met. Furthermore, contrary to Plaintiff's contention, the VAMC explained the factual basis for the examinations in its July 17, 2006, letter as it was required to do by 5 CFR 339.303.

Plaintiff's Partial Motion for Summary Judgment will be denied because it was not violative of any law or regulation for VAMC to force Leach to submit to a psychiatric examination after he threatened to kill himself and his colleagues at work.

### IV.    Conclusion.

Accordingly, it is hereby ORDERED that Leach's Partial Motion for Summary Judgment (Doc. 26) is DENIED.

SIGNED at Houston, Texas, this 28th day of September, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE