UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROBERT J LEACH, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. H-07-4331 |
| § | |
| GORDON H MANSFIELD, § | |
| § | |
| Defendant. § | |

## **OPINION & ORDER**

Pending before the Court is Defendant Eric K. Shinseki, Secretary of the United States Department of Veteran Affairs' (the "VA") Motion to Dismiss and/or for Summary Judgment. (Doc. 53.) To date, *pro se* Defendant Robert J. Leach ("Leach") has failed to file a response. For the reasons set forth below, the Court GRANTS the motion for summary judgment (Doc. 53).

I.  Background & Relevant Facts

This is a wrongful termination case. Plaintiff Leach began his employment at the Michael E. DeBakey Veteran Affairs Medical Center ("VAMC") in Houston, Texas in 2001 as a Human Resources Assistant. (Doc. 22 at 2.) From June 2, 2006 to August 31, 2006, Leach took approximately three months' leave due to work-related stress. (*Id.*) Defendant concedes that the work environment was highly stressful. (Doc. 32 at 2.) The VAMC had approximately 3,800 staff, which would usually require twelve employees to manage the Human Resources department. (Doc. 32-1 at 9.) Instead, the VAMC had four, and later three. (*Id.*) Despite the need to concentrate while "coding," the noise level in Leach's work space was continuously "cacophon[ic]." (*Id.* at 6.) Adding to the distraction, doctors, nurses and other staff were constantly walking in requiring attention, while the Human Resource Assistants were

simultaneously required to do the "coding." (*Id*. at 8.) According to a retired colleague, Paul Anderson ("Anderson"), who served in Vietnam and was partially disabled as a result of his service, the work "was like a war almost . . ., it was just impossible . . . ." (*Id.* at 10.) According to another retired colleague, Jessica Hilson, "[t]he stress weighed heavily on our health." (Doc. 26-15 at ¶ 5.) Anderson admitted he developed "physical problems" as a result of work-related stress that caused him to go to hospital. (Doc. 32-1 at 10.) Leach began seeing a doctor for mental health problems. (*Id*. at 6.)

Beginning on or about November 7, 2005, Leach addressed a series of lengthy e-mails to his colleagues and supervisors complaining about various workplace issues, including the size of the bonuses awarded to management as compared to the regular bonuses. (*See generally*, Doc. 26-14.) With regard to the bonuses, Leach wrote a "Letter of Concern" that stated:

> Questions:
>
> (1) "Self," and myself says, "What?" "Do you believe that these awards, as submitted, are either statutorily or regulatorally [sic] justified, as you understand the legal or regulartory [sic] criteria to be?"

(Doc. 26-14 at 2.) Leach concluded:

> "Now they can have the prize they won. The other part of my personality that is no where in the neighborhoods of pleasant, respectful or nice in any stretching of your imagination. My only requirement , as I see it, is to fight the urge to express my disrespect for these despicable %*&$#!!s."

(*Id*. at 4.) On or about May 11, 2006, Leach wrote in an e-mail to his colleagues and supervisors with the subject "I'm out of here!!":

> Even more, I have never been so tempted to simply "go 86." For those that don't know what "going 86" is, let is [sic] suffice us to understand it's not a good thing.

*(Id.* at 6.) "Going 86" is a derivative of the more commonly known phrase, "going postal."

Going postal was a phrase that arose in the 1990s to describe a series of workplace shootings where disturbed postal employees shot their colleagues and themselves to death.[1]  To 86 someone means effectively to kill him.  "The actual meaning comes from the size of a grave hole.  8' long, 6' deep."[2]  Thus, the amalgam "go 86" was an incoherent threat by Leach to kill his colleagues and supervisors.

On or about June 2, 2006, Leach requested sick leave from June 1, 2006 through to June 15, 2006.  (Doc. 26-10 at 1.)  In support of this request, Leach provided his treating physician's certification that he was suffering an "emotional reaction" to work-related stress.  On or about June 5, 2006, Leach's supervisor at VAMC, Jerry Erwin ("Erwin"), requested that Leach be subjected to a fitness-for-duty examination because of his e-mails.  (Doc. 32-4 at 1.)  On or about July 17, 2006, the VAMC informed Leach by letter that he was required to take the fitness-for-duty examination pursuant to 5 CFR § 339.301.  (Doc. 32-6 at 1.)  The letter stated, as the basis for the examination, that "[y]our recent absences from duty, recent medical certification, and reports of inappropriate or unusual behavior have raised concerns regarding physical and/or mental status in your ability to perform the full range of duties of your position."  (*Id.*)  The letter added, "These concerns have been reported by co-workers and your immediate supervisor."  (*Id.*)

On or about July 19, 2006, Leach reported for the examination.  (Doc. 32-7 at 1.)  Following a medical examination, he was scheduled for a psychiatric examination with Dr. Jaime Ortiz-Toro ("Ortiz-Toro").  (*Id.*)  Ortiz-Toro never completed the examination, however, as Leach refused and left before the doctor could finish.  (*Id.* at 1–3.)  Thereafter, VAMC decided that a further psychological examination was necessary.  (*Id.* at 3.)  On August 15, 2006, VAMC again directed Leach to attend a fitness-for-duty examination to take place on August 28,

---

[1] *See* http://www.phrases.org.uk/meanings/159050.html.
[2] *See* http://wiki.answers.com/Q/What_does_it_mean_to_'86'_someone.

2006.  (Doc. 32-8.)  Leach again reported for the examination, but refused to participate in parts of the psychological testing.  (Doc. 32-9.)

In an e-mail sent on September 5, 2006, Leach seemed to suggest his removal from the VAMC by stating, "Therefore, I am submitting this communication in request of a formal proposal of removal or whatever decision the agency deems suitable in this situation."  (Doc. 32-11 at 2.)  The VAMC proposed to remove Leach from employment with the VA by letter dated November 17, 2006, for failure to follow supervisory instruction and absenteeism.  (Doc. 32-12.)  A subsequent later dated December 20, 2006, confirmed Leach's removal.  (Doc. 32-13.)

On October 10, 2006, Leach filed an Equal Employment Opportunity ("EEO") complaint with the Department of Veterans Affairs Office of Resolution Management ("ORM") in Houston, Texas.  (Doc. 53-2.)  On November 17, 2006, the ORM issued a "Partial Acceptance of 'Mixed Case' Discrimination Complaint" notice.  (Doc. 53-3.)  The precise claim accepted for investigation was "A) Whether on the basis of disability (mental), the Complainant was discriminated against with respect to constructive suspension when: From September 1, 2006 to present, the Complainant has been charged AWOL for not submitting to a Fitness for Duty Examination."  (*Id.*)  A claim for reprisal was not accepted because "[r]eprisal for filing an [Office of Workers' Compensation Programs] claim does not constitute protected EEO activity and may be dismissed for failure to state a claim."  (*Id.*, citing *Doyle v. Secretary, Department of Commerce*, 01A12639 (2001)).  On August 28, 2007 the Office of Employment Discrimination Complaint Adjudication issued a Final Agency Decision dismissing Leach's claim for reprisal on the ground that he had failed to state a claim. (Doc. 53-4.)  On May 4, 2007 the Merit Systems Protection Board ("MSPB") issued an Initial Decision dismissing Leach's claims (Doc. 53-5) and, on November 13, 2007, the MSPB issued its final Opinion and Order denying Leach's

claims on appeal (Doc. 53-6).

Plaintiff received a right to sue letter on November 7, 2007 and filed suit on December 13, 2007. (Doc. 1.) In his Second Amended Complaint, Leach claims violations of the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act"), and the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* (Doc. 22 at 1.) Leach requests back pay, compensatory emotional damages of $300,000, and attorney's fees and costs. (*Id.* at 10.) On January 6, 2009, Leach filed a Motion for Partial Summary Judgment (Doc. 26), which was denied by this Court on September 28, 2009 (Doc. 48). Leach's relationship with his attorney, Joel Mallory, Jr. ("Mallory"), subsequently broke down and Mallory withdrew. (*See* Docs. 49 and 51.) On October 21, 2009, Defendant filed the instant Motion to Dismiss and/or for Summary Judgment. (Doc. 53.) Defendant Leach, now proceeding *pro se*, has not responded.

II. Standard for Summary Judgment

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless

of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the nonmoving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert.*

*denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075). The nonmovant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

The opposing party, however, still has an obligation to respond. "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "If the opposing party does not so respond, summary judgment should, if appropriate,

be entered against that party." *Id.* However, a "motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule." *Hibernia Nat. Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) (citing *John v. State of La. (Bd. of Trustees for State Colleges & Universities, et al.)*, 757 F.2d 698, 709 (5th Cir. 1985)). "The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." *Id.* at 708.

III. Discussion

In his first cause of action, Leach alleges that VAMC violated statutory prescriptions against unlawful medical inquiries in a manner inconsistent with job-relatedness and business necessity, under 29 U.S.C. §§ 791(g), 793(d), and 794(d), incorporating provisions of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(d)(4). (Doc. 22 at 6.) This argument was previously analyzed and rejected by the Court (Doc. 48 )in the context of Leach's Motion for Partial Summary Judgment (Doc. 26). Although the previous inquiry was limited to whether Plaintiff could prevail on his motion as a matter of law, the Court finds that, for the reasons cited in the Order denying that motion, dismissal of this cause is appropriate and therefore will not reexamine the issue here. (*See* Doc. 48 at 6–8.)

Next, Leach claims employment discrimination due to a perceived mental disability. (Doc. 22 at 7.) This claim is reviewed under the burden-shifting framework outlined in *McDonnell Douglas*. *McDonnell Douglas Co. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). "First, the plaintiff must establish a prima facie case of discrimination." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). This

burden is one of production and not of persuasion. *Id.* Once the plaintiff has established a *prima facie* case of discrimination, "the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802; *Reeves*, 530 U.S. 133; *Davis*, 14 F.3d at 1087. If the employer provides sufficient evidence to meet this burden, the plaintiff must prove that he "was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence." *Reeves*, 530 U.S. at 143 (internal quotations omitted). The plaintiff can meet this evidentiary burden by either providing evidence of intentional discrimination or establishing "the falsity of the employer's explanation." *Id.* at 147; *see Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 574-75 (5th Cir. 2004). Plaintiff must offer sufficient evidence to show "either (1) that the defendant's reason is not true, but instead is a pretext for discrimination (pretext alternative) or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed motive[s] alternative). *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). If a plaintiff demonstrates that the protected factor was a motivating cause of the employment decision, the defendant must prove "that the same adverse employment decision would have been made regardless of discriminatory animus." *Id.* Claims alleging disability discrimination under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, which incorporates key provisions of the ADA, 42 U.S.C. § 12101 *et seq.*, and is generally interpreted using ADA case law, also apply the *McDonnell Douglas* burden shifting analysis in cases where there is only circumstantial evidence of discrimination. *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003).

To establish a *prima facie* case of discrimination based on disability under the Rehabilitation Act, then, Leach must show that he (1) is disabled or is regarded as disabled; (2) is

qualified for the position; (3) suffered an adverse employment action on account of his disability; and (4) was replaced by or treated less favorably than non-disabled employees. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001); *Gowesky*, 321 F.3d at 511; *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999). Leach is unable to make a *prima facie* case of discrimination based on disability.

First, Leach cannot show that he is disabled or regarded as disabled. Plaintiff argues that "[a]lthough Dr. Horvath never conducted any examination of the Plaintiff, he concluded that Plaintiff's 'disproportional paranoia and mistrust' (along with a 'desperate attempt to mask of a [*sic*] underlying psychotic/borderline process') rendered him unable to perform his job." (Doc. 22 at 7.) However, in order to establish that he is "regarded or perceived as disabled[,]" Leach must show that the Defendant perceives him as substantially limited in his ability to perform a major life function. *Zenor v. El Pase Healthcare Sys. Ltd.*, 176 F.3d 847, 859–860 (5th Cir. 1999); *Burch v. Coca-Cola Co.*, 119 F.3d 305 (5th Cir. 1997). Leach's inability or perceived inability to perform his specific job at the VAMC does not establish a disability or perceived disability under the ADA. Rather, Plaintiff must be perceived as being substantially limited in performing a broad range of jobs. *Id.* Further, requesting that an employee, who has made clearly threatening remarks, undergo a fitness for duty examination does not in itself show that the employer perceives the employee to have a substantially limiting impairment. *See, e.g., Bodenstab v. County of Cook*, 539 F.Supp.2d 1009, 1016 (N. D. Ill. 2008); *Sullivan v. River Valley School District*, 197 F.3d 804, 811 (6th Cir. 1999).

Leach is also unable to show that he was dismissed on account of a disability or perceived disability, as required for the third prong of a *prima facie* case of disability discrimination. Although Defendant ultimately removed Leach from his job, this action was in

10 / 12

large measure for his steadfast refusal to participate in the fitness for duty examination, a reason wholly distinguishable from any disability or perceived disability.

Even assuming, *arguendo*, that Leach could establish a *prima facie* case, he would still have to show that the Defendant's proffered reasons for his termination—insubordination and unexcused absence—are false or mixed with other unlawful motives. *Reeves*, 530 U.S. at 143. In *Reeves*, the Supreme Court held that it is sufficient that the proffered reason is false to sustain a judgment for the plaintiff, unless the demonstration of falsity so strongly leads to the conclusion that the real reason was unrelated to discrimination. *Reeves*, 530 U.S. at 147. "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Id*. at 148; *Cf. Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) ("When all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts with some reason, based [its] decision on an impermissible consideration"). Giving full credence to Leach's allegations, the Court finds no evidence to demonstrate that the Defendant's proffered reason for firing Leach are false or mere pretext.

Leach's third cause of action charges Defendant with retaliation for his refusal to comply with the request for a fitness for duty examination. (Doc. 22 at 8.) The Rehabilitation Act incorporates a provision of the ADA, which makes discrimination unlawful where an individual has "opposed any act or practice made unlawful by this chapter." *See* 29 U.S.C. §§ 791(g), 793(d), 794(d), 42 U.S.C. § 12203(a). As the Court has previously found Defendant's request for a fitness for duty examination lawful and reasonable under the circumstances, this claim fails. (*See* Doc. 48.)

Finally, Leach asserts a cause of action for violation of Section 2615(a) of the FMLA. 29 U.S.C. § 2615(a). However, Leach was an "employee" within the meaning of Title II of the FMLA, 5 U.S.C. §§ 2105, 6301, and 6381, who had completed at least twelve months of service. (*See* Doc. 53-4 at ¶ 2.) "Federal employees with more than twelve months of service do not have a private right of action for FMLA violations." *Carlson v. White*, No. 04-41456, 133 Fed. Appx. 144, 144–45 (5th Cir. 2005) (citing 5 U.S.C. §§ 6381–6387) (*per curiam*). The United States, as sovereign, is immune to suit except as it consents to be sued. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Herbert v. U.S.*, 438 F.3d 483, 487 (5th Cir. 2006). Because sovereign immunity must be expressly and unequivocally waived, Title II's lack of an express provision allowing a private right of action means that the Court lacks subject matter jurisdiction over this claim. *Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 734 (1982).

IV. Conclusion

Accordingly, it is hereby ORDERED that Defendant Eric K. Shinseki, Secretary of the United States Department of Veteran Affairs' Motion for Summary Judgment (Doc. 53) is GRANTED.

SIGNED at Houston, Texas, this 24th day of February, 2010.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE